888 So.2d 923 (2004)
STATE of Louisiana
v.
Terrell INGRAM.
No. 04-KA-551.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
Hon. Harry J. Morel, Jr. District Attorney, Juan A. Byrd, Assistant District Attorney, Hahnville, LA, for Plaintiff/Appellee.
M. Connie Hanes, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
*924 Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA, THOMAS F. DALEY.
JAMES L. CANNELLA, Judge.
The Defendant, Terrell Ingram, appeals from his conviction of distribution of an imitation or counterfeit controlled dangerous substance which is falsely represented to be a controlled dangerous substance. La. R.S. 40:971.1. We affirm the conviction and sentence and remand.
On August 1, 2003, the Defendant was charged with distribution of cocaine. La.R.S. 40:967(A)(1). He was arraigned on August 28, 2003 and pled not guilty. Next, he filed a motion to suppress the evidence that was denied on November 20, 2003. On that same date, the State amended the bill of information to charge the Defendant with distribution of a counterfeit schedule II controlled dangerous substance, in violation of La.R.S. 40:967(A)(2). The Defendant was rearraigned and he pled not guilty.
On December 2, 2003, the State again amended the bill of information to charge the Defendant with distributing a counterfeit schedule II substance, in violation of La.R.S. 40:971.1. The Defendant was arraigned that date and pled not guilty. Following the arraignment and not guilty plea, the case was tried before a six-person jury. The Defendant was found guilty as charged. The Defendant's motion for new trial and motion for post-verdict judgment of acquittal were denied on January 22, 2004. On February 5, 2004, the trial judge sentenced the Defendant to five years imprisonment at hard labor to run concurrently with the time which he was already serving. The Defendant filed a motion for appeal on February 27, 2004.
Captain B.J. Rock, an Assumption Parish Sheriff's officer, testified that, on April 30, 2003, he was working undercover in St. Charles Parish in order to make street-level drug buys. As he traveled down Tinny Street and approached its intersection with South Kinler Street, he observed a black male, later identified as the Defendant, standing on the corner. According to Captain Rock, the Defendant was wearing a sweatshirt with Fat Albert characters on the front.
Captain Rock drove up to the Defendant and asked him if he had "20 hard," which Captain Rock explained was street slang for $20 worth of crack cocaine. The Defendant told him to "[h]old up," and Captain Rock waited for a short time. The Defendant came back to the truck and gave Captain Rock a piece of what he (Captain Rock) thought was crack cocaine. Captain Rock gave the Defendant $20 and drove off. The truck was equipped with a videotape which recorded the transaction.
The videotape shows the transaction starting at 11:06 p.m. There is no audio on the videotape. The videotape depicted a vehicle moving in the dark. When the vehicle stopped, a black male wearing a sweatshirt walked up to the car and then walked away. A moment later he returned to the car and left again. Two men are then seen walking past the car. The same black male approached the vehicle again and walked away again. At that point, the car left the scene. The videotape ends at approximately 11:09 p.m. In the videotape, only the sweatshirt and a portion of the face of the black male are visible.
After the purchase, Captain Rock placed the object in a bag, wrote "buy no. 4" on the bag, indicating that it was his fourth purchase of the evening, and put the date on the bag. Captain Rock then met with his "cover team" at a predetermined location. He gave the bag containing the object to the cover team leader, Detective Jason Guidry of the St. Charles Parish *925 Sheriff's office, and viewed the videotape at slow speed with the detective, pointing out the individual who had sold him what he believed to be crack cocaine. Captain Rock testified at trial that the individual shown in the videotape was the same individual who sold him the substance. Captain Rock positively identified the Defendant in court as the black male in the sweatshirt in the video who sold him the substance.
Detective Guidry testified that, at approximately 11:07 p.m., Captain Rock purchased what he believed to be crack cocaine from the Defendant in a "pretty bad area" where a lot of narcotics trafficking occurred. Detective Guidry explained that the cover team, which was located a short distance away, monitored the transaction using an audio transmitting device. Minutes after making the purchase, he met with Captain Rock and the other members of the cover team at a predetermined location. Detective Guidry testified that when he viewed the videotape of the transaction, he immediately recognized the Defendant as the individual selling the purported crack cocaine. He explained that the audio was not recorded during the transaction in order to protect the identity of the confidential informant who was riding with Captain Rock. He added that the confidential informant sat in the vehicle so street-level dealers would see someone inside the vehicle whom they recognized. Detective Guidry further testified that Captain Rock gave him the suspected crack cocaine, that he field tested it, and that it tested positive for the presence of cocaine.
Bill Slaten, the evidence custodian for the St. Charles Parish Sheriff's Office, testified that the lab report shows that the off-white rock substance was tested, and that no controlled substances were detected.
On appeal, the Defendant asserts that the evidence was insufficient to convict him of distribution of a substance falsely represented to be a controlled substance. He argues that the State failed to negate any reasonable probability of misidentification and that the State failed to prove that the Defendant had the requisite intent to distribute.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Johnson, 01-1362, p. 7-8 (La.App. 5th Cir.5/30/02), 820 So.2d 604, 608, writ denied, 02-2200 (La.3/14/03), 839 So.2d 32. When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Cazenave, 00-183, p. 14 (La.App. 5th Cir.10/31/00), 772 So.2d 854, 860, writ denied, 00-3297 (La.10/26/01), 799 So.2d 1151. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. Id.; State v. Marcantel, 00-1629, p. 9 (La.4/3/02), 815 So.2d 50, 56.
In cases involving circumstantial evidence, La.R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." In State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83, the Louisiana Supreme Court stated:
On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a the Defendant could afford an exculpatory explanation *926 of the events." ... Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt....
(Citations omitted; emphasis in the original).
When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. Cazenave, 00-183 at 14, 772 So.2d at 860. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. Id.; Marcantel, 00-1629 at 9, 815 So.2d at 56.
In this case, the Defendant was convicted of violating La.R.S. 40:971.1, which provides in pertinent part:
A. It shall be unlawful for any person to produce, manufacture, distribute, or dispense any substance which is represented to be a controlled dangerous substance and which is an imitation controlled dangerous substance, or any controlled dangerous substance which is a counterfeit controlled dangerous substance.

Identity
The Defendant argues that the evidence was legally insufficient to support the conviction because the State failed to negate any reasonable probability of misidentification.
Encompassed in proving the elements of an offense is the necessity of proving the identity of the Defendant as the perpetrator. When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Billard, 03-319, p. 5 (La.App.5th Cir. 7/29/03), 852 So.2d 1069, 1072, writ denied, 03-2437 (La.2/6/04), 865 So.2d 739.
Captain Rock testified that a black male wearing a Fat Albert sweatshirt sold him what he believed to be crack cocaine. He further testified that the individual shown in the videotape was the same individual who sold him the substance. Additionally, Captain Rock positively identified the Defendant in court. Detective Guidry, who viewed the videotape of the transaction, testified that he immediately recognized the subject to be the Defendant.
The Defendant contends that Captain Rock's testimony was not credible because it was inconsistent with his prior testimony at the suppression hearing and with Detective Guidry's trial testimony. The Defendant specifically notes that Captain Rock was inconsistent regarding whether he had viewed the videotape on the night of the incident. At the suppression hearing, he testified that he could not recall whether he viewed the videotape the night of the transaction. At trial, he testified that he had viewed the videotape that night and that Detective Guidry had recognized the Defendant on the tape. The Defendant claims that Captain Rock's testimony on this point conveniently changed at trial to be consistent with that of Detective Guidry.
The Defendant also points out that Captain Rock could not remember any of the circumstances surrounding the alleged drug transaction, such as whether there was a confidential informant in the vehicle at the time of the transaction, whether the seller stepped away and returned with the rock or whether he turned away from him for a minute before producing the rock, whether the seller took the rock out of his pocket or got it from somewhere else, *927 whether he approached the seller or whether the seller flagged him down, and whether the seller wore a hat or had facial hair, tattoos, or gold teeth. Defense counsel elicited these inconsistencies and Captain Rock's inability to remember the details of the transaction during cross-examination at trial.
Although Captain Rock was inconsistent in his testimony as to when he viewed the videotape, the jury was also presented with the testimony of Detective Guidry whose testimony supported Captain Rock's trial version of the events and the identification of the Defendant. The jury made credibility determinations and found the officers' testimony credible despite any inconsistencies in Captain Rock's testimony. The appellate court does not reweigh the evidence or assess credibility. Cazenave, 00-183 at p. 14, 772 So.2d at 860; Marcantel, 00-1629 at 9, 815 So.2d at 56. Thus, we find no error in this regard.
With respect to Captain Rock's inability to recall details of the transaction, a rational trier of fact could have concluded that Captain Rock provided a reasonable explanation. Captain Rock testified that when he is buying drugs, he tries to concentrate on the important things and on what is going on around him. He explained that he is alert for the appearance of weapons and individuals approaching him on the other side of the vehicle to rob him. He noted that conducting undercover operations was dangerous, that he does not remember every fact pertaining to every drug buy, and that each drug buy only lasts approximately one to one and a half minutes.
Captain Rock's explanation was reasonable. Again, the jury made credibility determinations regarding his testimony. Credibility determinations rest with the trier-of-fact, and will not be reweighed on appeal. Cazenave, 00-183 at p. 14, 772 So.2d at 860; Marcantel, 00-1629 at 9, 815 So.2d at 56. Based on the foregoing, we find that the State met its burden of negating any reasonable probability of misidentification.

Intent
The Defendant argues that the State failed to prove that he had the requisite intent to distribute an imitation substance and that he represented the object as a controlled substance. The Defendant argues that there was no way to know whether he knew that "20 hard" meant $20 worth of crack cocaine. He points out that the State did not prove what the substance was that he allegedly gave to Captain Rock and, thus, there existed the reasonable hypothesis that Captain Rock flagged him over and asked for something legal, and that the Defendant was not expecting to receive $20 in payment.
In State v. Pierre, 500 So.2d 382 (La.1987), cited by the Defendant, the Louisiana Supreme Court discussed intent with regard to La.R.S. 40:971.1:
Intent is an indispensable element of a criminal offense. State v. Brown, 389 So.2d 48 (La.1980). The culpable mental element in R.S. 40:971.1 is the representation underlying the nature of the substance. It is impossible for one to unknowingly represent that a substance is an illegal drug or narcotic. When one "represents," he acts with intent. Thus, the criminal intent required by the statute is implicit in the word "represented." The state bears the burden of proving the offender's criminal intent by showing that the offender produced, manufactured, distributed or dispensed a substance which he represented to be a controlled dangerous substance.... The offender's actual knowledge of the nature of the substance is irrelevant.
Id. at 384-385.
Captain Rock testified that he drove his car to where the Defendant was standing *928 on a street corner and asked him if he had "20 hard." Captain Rock explained that the terminology is street slang for $20 worth of crack cocaine. He testified that he has 17 years of law enforcement experience, that the past three years had been devoted specifically to narcotics, and that he had made drug buys in the past for the St. Charles Parish Sheriff's office. He stated that he had heard the term "20 hard" used numerous times. Furthermore, Detective Guidry testified that the area where the incident occurred was a "pretty bad area," and that a lot of narcotics trafficking was conducted in that area.
Based on the testimony of the officers and the Defendant's location and actions, we find that a rational juror could have reasonably inferred that the Defendant would have asked Captain Rock what a "20 hard" meant if he did not know. Instead he returned with a substance that Captain Rock, in his years of experience in narcotics, believed to be crack cocaine. In addition, the Defendant was standing on a street corner late at night in an area known for narcotics trafficking. Thus, we find that the State proved the requisite intent of the Defendant.
After our review, we find that viewing the evidence in a light most favorable to the prosecution, the State excluded "every reasonable hypothesis of innocence" and that that a rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.

ERROR PATENT
The record was reviewed for patent errors in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198. We find one patent error requiring action by this Court.
The record shows that the trial judge failed to advise the Defendant of the two-year prescriptive period for filing an application for post-conviction relief, pursuant to La.C.Cr.P. art. 930.8. Thus, in conformity with our policy, we will order the trial judge to advise the Defendant of the two-year prescriptive period by sending written notice to the Defendant within ten days after the rendition of this opinion and to file written proof in the record that the Defendant received such notice. See: State v. Esteen, 01-879, p. 28 (La.App. 5th Cir.5/15/02), 821 So.2d 60, 78.
Accordingly, the Defendant's conviction and sentence are affirmed and the case is remanded.
CONVICTION AND SENTENCE AFFIRMED, CASE REMANDED.